IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


CAROLYN KELLEY                                                                                    PLAINTIFF

VS.                                                          CIVIL ACTION NO.  2:06CV176KS-MTP

LIFE INSURANCE COMPANY
OF NORTH AMERICA                                                                               DEFENDANT


**MEMORANDUM OPINION AND ORDER**

This cause is before the court on a motion for summary judgment filed by defendant Life Insurance Company of North America ("LNA") and a motion to remand the case to the plan administrator filed by plaintiff Carolyn Kelley.  From its review of all matters made a part of the record of this case as well as applicable law, and being thus fully advised in the premises, the court FINDS that the motion to remand is well taken and should be granted and that the motion for summary judgment should be held in abeyance, pending the outcome of a new disability determination by LNA.

FACTUAL BACKGROUND

Plaintiff Carolyn Kelley was an employed at Centerpoint Energy, Inc. ("Centerpoint") from 1974 to 2005 as a Business Representative.  LNA issued a Long-Term Disability policy (the "Policy) as part of an Group Welfare Benefits Plan (the "Plan) established by Centerpoint.  Ms. Kelley was a participant in the Plan.

The Policy provides that LNA will pay disability benefits if an employee becomes "disabled" while covered under the Policy.  The Policy defines "disabled" as when an employee

1

is either "unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative" or "unable to earn 60% or more of his or her Indexed Covered Earnings." The employee must first satisfy a 180 day waiting period, during which the employee must be "continuously disabled."

Plaintiff's position as a Business Representative had three levels (I - III), with III being the most senior. Plaintiff had attained the status of level III at the time she stopped working at Centerpoint. Plaintiff's responsibilities included clerical, administrative and /or customer service duties within the office. Specifically, a Business Representative III:

> Performs advanced level clerical and accounting duties. Cashiers, computers and corrects customer billings, provides receipts, prepares customer accounting reports, prepares and makes bank deposits and transmits payment information to computer in General Office. Takes customer applications for new, transfer of, and termination of service. Takes customer requests for service. May dispatch orders to service personnel. Investigates customer complaints. Typically requires 5-8 years experience.

In addition, the Business Representative III may train entry-level Business Representatives as necessary, handles customer complaints or difficult customer service problems, and may take a lead role in the absence of other supervisors or managers. In order to meet the physical demands of the job, an employee must: (1) be able to exert up to 10 pounds of force occasionally, and/or a minimal amount of force to frequently lift, carry, push, pull or otherwise move objects; (2) be able to bend and stoop for filing and must be able to sit for extended periods of time; (3) be able to view computer terminal for an extended period of time; and (4) have manual dexterity to operate a personal computer and other office equipment such as copy machine, fax machine, calculator, telephone, etc. Plaintiff's position is classified as "sedentary" in the Dictionary of Occupation

Titles.

On May 2, 2003, an MRI was performed on plaintiff and Dr. Minipuri G. Ramesh-Singh, a board-certified Neurologist, diagnosed plaintiff with a basilar tip aneuryism.[1] However, plaintiff was not made aware of this diagnosis until 2005 and during that time she continued to work at Centerpoint in her same position. In May 2004, plaintiff fell at work due to dizziness and broke her arm. On June 1, 2005, plaintiff complained to her family doctor, Dr. Jack Evans, of sudden onset of dizziness with blurred vision. Dr. Evans ordered an MRA of the brain which revealed the presence of the aneurysm. The report noted that the appearance of the aneurysm was stable from May 2003. An MRI was also done, which indicated that the brain was stable compared to May 2003 and that a few hyperintensities were seen with a similar appearance to May 2003.

Dr. Evans then referred Ms. Kelley to Dr. Adam Lewis at the Jackson Neurosurgery Clinic. Dr. Lewis diagnosed plaintiff with an inoperable aneurysm and provided her with a release form instructing her not to return to work. Dr. Lewis expressed concern that the pressures and stress associated with her job might cause the aneurysm to rupture. After presenting the release form to Charlie Williams at Centerpoint, Mrs. Kelley was told she could not work and would have to be placed on short term disability.[2]

Shortly thereafter, Ms. Kelley applied for long-term disability benefits. In support of her application, she submitted office notes and medical records from Dr. Evans, Dr. Lewis, Dr. Adam

---

[1] An aneurysm is "[a] sac-like dilation in an artery or vein, usually the former, as a result of a weakness in the wall of the structure and the pressure of the blood within the artery."

[2] Ms. Kelley applied for short-term disability in July 2005 and received it through November 2005.

Mathis (also at Jackson Neurosurgery Clinic), Dr. Singh and Dr. James R. House, III.[3]  Dr. Mathis' physician's statement, dated July 11, 2005, diagnoses plaintiff with a basilar aneuryism and states that Ms. Kelley could not return to full-duty or restricted duty work.  He states that she "will be permanently disabled" as a result of the aneuryism.   Dr. Evans provided treatment notes and the MRI results showing the aneurysm.  Dr. Lewis wrote a letter dated July 1, 2005 in which he stated that a repeat MRI showed that the bsilar tip aneurysm was unchanged from the May 2, 3003 MRI, and that plaintiff's symptoms were intermittent and less frequent since treatment was initiated.  Plaintiff also submitted a disability questionnaire indicating that she planned to engage in walking for exercise when the weather cooled off, and that she cooked, cleaned, shopped, did laundry, gardened, read and watched television.  Ms. Kelley indicated that she was able to care of her daily needs and was able to drive.

     LNA then requested additional information from Drs. House, Lewis and Evans (complete copies of treatment notes, physical ability assessment form, return to work prognosis and current treatment plan).[4]  Dr. Mathis completed a physical ability assessment form dated September 29, 2005, in which he indicated that in an eight-hour workday, plaintiff could lift 10 pounds continuously, 11-20 pounds frequently, and could not lift anything heavier, and that she could carry 11-20 pounds frequently and could not carry anything heavier (the rest of the listed activities were not applicable to her diagnosis).

---

[3] Dr. House is an ear, nose and throat doctor at the Jackson Ear Clinic, to whom plaintiff was referred because she had been experiencing lightheadedness and falling episodes.  Dr. House's examination of plaintiff only addressed her ear and did not address her neurological health.

[4] Dr. House indicated that he had seen Ms. Kelley only one time and therefore could not assess her physical ability.

On October 4, 2005, LNA wrote to Dr. Lewis and asked him whether he had advised Ms. Kelley to stop working due to her diagnosis, and whether she was or was not able to return to her occupation. If Dr. Lewis' opinion was that Ms. Kelley was not able to return to work, LNA asked Dr. Lewis to provide medical documentation to support her inability to return to work.

Dr. Mathis wrote to LNA on October 19, 2005 in response to their request for additional information. In his letter, Dr. Mathis stated: "Please be advised that [Ms. Kelley] has an aneurysm of the tip of the basilar artery. We are quite concerned that this aneurysm may rupture and she would bleed into the brain at anytime in the future. Surgery continues to be considered; however, at the present time, it is felt feasible to continue observation of this aneurysm." Dr. Mathis continued: "We are concerned that any stress, especially with her occupation, would be a concern with regard to elevation of blood pressure and eventual rupture of this aneurysm. It is on this basis that the Jackson Neurosurgery Clinic has recommended a retirement and permanent disability for Carolyn Kelley."

On October 28, 2005, Dr. Mathis examined plaintiff and wrote a letter describing the visit. He stated that there was "now some concern that Ms. Kelley may be developing brainstem drop attacks as she has had five or six episodes over the last several months of nearly falling to the ground." He also stated that Ms. Kelley had undergone cerebral MRI and MRA scans which revealed no evidence of intracranial hemorrhage or mass effect" and that her aneurysm had not changed in size. Dr. Mathis decided to admit Ms. Kelley to St. Dominic Hospital in Jackson to study her aneurysm with arteriography.[5]

---

[5] LNA's records indicate that plaintiff did not have the arteriogram because her husband was out of town and she was concerned about having such an invasive procedure.

On November 14, 2005, plaintiff submitted an application for social security disability benefits.[6]

As of November 9, 2005, LNA was unable to make a decision based on the medical information submitted and therefore they decided to send Ms. Kelley for an independent medical evaluation ("IME") to determine whether she was capable of continuing sedentary work.  On January 4, 2006, Ms. Kelley was examined by Dr. Mitchell Myers, a neurologist with MLS National Medical Evaluations, Inc.  Dr. Myers stated that it was unclear whether plaintiff's reported drop and syncope episodes were directly associated with the brain aneurysm.  Dr. Myers noted that Ms. Kelley's treating neurosurgeons were concerned about plaintiff returning to work in that stress might aggravate and possibly rupture the aneurysm, and indicated that it would be necessary for plaintiff to return to work in a "less stressful position within a job/occupation of mild stress" because "[s]uch is an appropriate return-to-work guideline for individuals who have aneurysms as noted."  He concluded: "If the sedentary occupation was of a mild stress level, then there is no reasoning on why [Ms. Kelley] would not be able to physically function in such a level of gainful employment.  The question on her ability to function within the sedentary occupation is in relation to the overall stress level in that it must be mild in nature for reasons as outlined.  Physically [Ms. Kelley] is capable of functioning within such capacity."  Dr. Myers also filled out a physical ability assessment form.  This form indicated that Ms. Kelley could occasionally, stand, walk, reach, lift ten pounds, carry ten pounds, push, pull, balance, stoop, kneel, crouch, and crawl.

---

[6] On March 6, 2006, the Social Security Administration denied plaintiff's claim for disability benefits.  Plaintiff's request for reconsideration was sent on March 23, 2006.  It is unclear what the status of this claim is, although based on the parties' briefs, it appears to have still been pending as of August 29, 2006.

Dr. Myers also noted that plaintiff's blood pressure was elevated and that this needed to be closely followed by her physician.

By letter dated January 27, 2006, plaintiff's claim for long-term disability benefits was denied. Kim Jackson, Disability Claim Manager, explained that LNA had considered plaintiff's claim file as a whole and had "determined that there is insufficient medical evidence to support an ongoing functional impairment which would preclude you from performing gainful employment." Specifically, LNA concluded as follows:

> Based on a review of the claim file in its entirety, the medical information provided by your treating physicians and from the Independent Medical Evaluation, we have determined that you are capable of performing a sedentary occupation for an 8 hour work day and that your condition would not prevent you from performing the material duties of your Regular Occupation as performed in the general labor market in the national economy. While we understand why your physicians have advised you to stop working as stress may cause your aneurysm to rupture, you and your physicians have not provided documentation that supports returning to work would cause your condition to worsen. You were diagnosed with the aneurysm in May 2003 and worked until June 2005 at which time nothing changed according to the medical documentation provided that would preclude you from continuing to work as a Business Representative.

Three days later, in a January 30, 2006 letter to CNA, Dr. Mathis stated: "Basal artery aneurysms may be technically a challenge to treat from a surgical view point, and it has therefore been recommended, as it has not yet ruptured, that Ms. Kelley undergo a permanent disability so that there may be excellent control of her stress and blood pressure." Dr. Mathis concluded: "Based upon this information, the Jackson Neurosurgery Clinic continues to recommend that Ms. Carolyn Kelley be awarded a disability retirement with permanent disability."

On March 10, 2006, Ms. Kelley's attorney wrote to LNA requesting a review of the denial of benefits. Included with the appeal was a February 22, 2006 letter from Dr. Singh. Dr. Singh confirmed that he had been treating Ms. Kelley since May 2003 for recurrent attacks for near syncope and drop attacks as well as disequilibrium, and that she had been diagnosed with an aneurysm over the tip of the basilar artery. Dr. Singh noted that Ms. Kelley continued to have baseline disequilibrium as well as drop attacks. Dr. Singh noted that MRI of the brain showed some white matter hyperintensities suggestive of hardening of arteries within the small vessel territory. Dr. Singh concluded: "Due to her aforementioned problems, I would consider her permanently impaired and disabled."

On April 19, 2006, plaintiff's attorney wrote to LNA requesting that they postpone consideration of plaintiff's appeal until receiving the latest medical records from Dr. Lewis, expected to be transcribed by April 24. On May 1, plaintiff's attorney sent LNA a copy of Dr. Lewis's April 19th report. In the report, Dr. Lewis indicated that plaintiff had returned to his office for a follow-up visit. Dr. Lewis noted that plaintiff had been having migraine headaches several times a week for the past few years (with an intensity of 5 on a 10-scale) and that the most recent imaging studies (performed that day) showed two additional aneurysms (a small right paraclinoid artery aneurysm and a bilateral posterior communicating artery infundibuli). Dr. Lewis stated that the aneurysms were unruptured and small in size and that plaintiff's "neurologic examination is normal." Dr. Lewis concluded: "I am in agreement with Dr. Jacob Mathis that the patient should be awarded a disability retirement with permanent disability due to the headaches, difficulty with blood pressure control, and the multiple intracranial aneurysms."

By letter dated May 23, 2006, Medha Bharadwaj, Appeal Claim Manager, informed

plaintiff that the previous denial of long-term disability benefits was being affirmed because:

> Ms. Kelly has a history of aneuryism and has worked for 2 years with this condition.  There is no evidence of a change in her condition as of June 6, 2005 that would have rendered her Totally Disabled from her occupation.  Our Medical Director said that there is no medical evidence in file to support that Ms. Kelley's blood pressure can be elevated by stress at work and in turn endanger her aneurysm and cause it to rupture.  Therefore, the medical information does not support limitations and/or restrictions that would preclude Ms. Kelley from performing her occupation from June 6, 2005 through present.

Plaintiff filed suit against LNA on July 3, 2006.  Subsequently, in conjunction with plaintiff's ongoing claim for Social Security disability benefits, Dr. Lewis ordered plaintiff to undergo a Physical Performance Evaluation ("PPE").  The PPE was conducted by Tim Cunningham, a Physical Therapist, on August 29, 2006.  The PPE used certain objective tests to measure the motion of plaintiff's cervical region, her pain tolerance, and her ability to perform tasks such as lifting, pushing, pulling, climbing, etc.  In his report, Mr. Cunningham noted that there were various tasks that caused plaintiff pain, that plaintiff had decreased strength, significantly limited range of motion, and a significant decrease in her balance which was a safety concern.  Mr. Cunningham concluded that plaintiff's "current abilities place her below that of a full sedentary job demand category."  The PPE was sent to LNA by plaintiff's counsel on September 8, 2006.

On January 15, 2007, plaintiff moved to remand this case to the plan administrator, so that LNA could consider the PPE and make a new disability determination.  On January 31, 2007, LNA moved for summary judgment.

## ANALYSIS

Plaintiff has moved to remand this case to the plan administrator so that LNA can make a new disability determination, taking into consideration the results of the PPE, which was not available at the time of her initial application for disability benefits or her appeal.

Under ERISA, the plan administrator, not the court, is designated by Congress as the trier of fact. *See*, *e.g.*, *Johnston v. Dillard Dep't Stores*, 1993 WL 70274, at * 1 (E.D. La. 1993). The district court is intended to act in an appellate capacity, reviewing the administrative record to determine if the administrator abused its discretion in denying benefits. *Hedgepath v. Blue Cross & Blue Shield*, 2006 WL 2331191, at * 1 (N.D. Miss. Aug. 10, 2006) *(citing McDonald v. Entergy Operations, Inc.*, 2005 WL 2474701, at * 5 (S.D. Miss. Apr. 29, 2005)). Once a lawsuit has been filed, the parties are generally not permitted to supplement or expand the administrative record. *See Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 298-300, 302 (5th Cir. 1999). For that reason, remand of an ERISA case to the plan administrator is allowed only where "special circumstances" are present. *Hedgepath*, 2006 WL 2331191, at * 1(*citing Vega*, 188 F.3d at 302 n.13 (stating that "[i]n some special circumstances a remand to the administrator for further consideration may be justified.")).[7]

The Fifth Circuit has stated that "[i]f new evidence is presented to the reviewing court on the merits of the claim for benefits, the court should, as a general rule, remand the matter to the

---

[7] In its response to the motion to remand, LNA argues that *Vega* makes it clear that the court wants to "encourage each of the parties to make its record <u>before</u> the case comes to federal court." 188 F.3d at 302 n.13 (emphasis added). However, in this case, the PPE became available only after the administrative process had been completed and suit was commenced. Consistent with *Vega*, plaintiff made her administrative record with all available evidence prior to initiating the instant action. Thus, plaintiff is not seeking to add evidence to the administrative record that was formerly available, but instead is seeking to have new, previously unavailable evidence submitted to the plan administrator for consideration.

plan administrator for further assessment. ...[unless] it would be a useless formality." *Offutt v. Prudential Ins. Co.*, 735 F.2d 948, 950 (5th Cir. 1984) (citations omitted); *see also Hedgepath*, 2006 WL 2331191, at * 1 (holding that "new evidence on the merits of the Plaintiff's claim for benefits qualifies as a special circumstance sufficient to warrant this case being remanded to the plan administrator for further review."); *Johnston*, 1993 WL 70274, at * 1 ("When new evidence comes to light, it is therefore appropriate and necessary for district courts to remand the case to the plan administrator for further findings of fact unless doing so would be futile...[T]he plan administrator must be afforded an opportunity to consider new evidence recently uncovered by the parties."); *Harvey v. Unum Life Ins. Co.*, 2005 WL 2620529, at *4-5 (W.D. La. Oct. 14, 2005) (remanding case to plan administrator to consider new evidence submitted after commencement of lawsuit).

  The PPE only became available after the commencement of this litigation. It documents plaintiff's performance on several physical tests designed to gauge her ability to perform certain levels of work. The physical therapist conducting the examination opined that plaintiff is physically incapable of performing a sedentary-level job. The court cannot say that this evidence is so weak as to render remand a futile exercise.[8] The court therefore finds that this matter should be remanded to the Plan Administrator for consideration of the PPE.

  Defendant argues that because LNA already requested, received and considered at least two "Physical Ability Assessments" by separate physicians (Drs. Mathis and Myers), plaintiff's motion to remand should be denied. However, as plaintiff points out, these Physical Ability

---

[8] Indeed, the court expresses no opinion whatsoever about the weight, if any, the plan administrator should give the PPE in making a new disability determination.

Assessments are different from the PPE. For one thing, the Physical Ability Assessments were survey forms distributed to plaintiff's treating physicians, requesting that each opine as to what levels of physical exertion plaintiff could perform, whereas the PPE was based on an array of objective physical tests that measured maximum lifting capabilities, positional tolerances and pain tolerances.

Defendant also argues that the PPE is irrelevant because it does not address plaintiff's condition during the relevant time period (the date she stopped working and the 180-day waiting period). However, as plaintiff points out, there is nothing in the record to suggest that plaintiff's condition changed between the date she supplemented her record on appeal (May 1, 2006) and the date of the PPE (August 29, 2006). In addition, the PPE appears to address at least some of the symptoms that were documented earlier in plaintiff's medical records.[9]

Finally, defendant argues that it would be prejudiced by a remand because it would delay the adjudication of this dispute and increase expenses. The court does not find this to be compelling. Remand for sixty days to allow LNA to consider the PPE and make a new disability determination (while staying this action) would be a minor inconvenience. After the new disability determination is made, LNA can (if necessary) re-urge and supplement its existing motion for summary judgment, without having to duplicate its work, thus cutting down on additional expenses.

IT IS, THEREFORE, ORDERED AND ADJUDGED that plaintiff's motion to remand [# 12] is granted and the plan administrator is ordered to consider the PPE and make a new

---

[9] At any rate, this is an issue that is more appropriately addressed by the plan administrator and will presumably be a factor in their new disability determination.

disability determination within sixty (60) days of entry of this order.  During this sixty-day period, this case shall be stayed.

IT IS FURTHER ORDERED AND ADJUDGED that defendant's motion for summary judgment [# **16**] is held in abeyance, pending the outcome of the new disability determination.  The parties shall notify the court within ten (10) days of the new disability determination.   At that time (if necessary), the court shall allow LNA the opportunity to re-urge and supplement its motion for summary judgment.

SO ORDERED and ADJUDGED on this, the 25th day of July, 2007.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE